In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3261

CONTINENTAL CASUALTY COMPANY,

*Plaintiff-Appellee*,

*v.*

SYCAMORE SPRINGS HOMEOWNERS ASSOCIATION, INC.,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:09-cv-0007-LJM-DML—**Larry J. McKinney**, *Judge*.

ARGUED APRIL 1, 2011—DECIDED JULY 22, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER and EVANS,
*Circuit Judges*.

EASTERBROOK, *Chief Judge*. A residential developer
built a new subdivision of Indianapolis in the floodplain
of the White River. Both the developer and the buyers
(who have organized as Sycamore Springs Homeowners
Association) knew that the land is low-lying and prone
to flooding. Sheehan, the developer, constructed levees
and floodwalls to protect the houses; it also built re-

tention ponds and a stormwater holding system. The Courtyard Homes at Sycamore Springs, LLC, handled the construction and sale of buildings in the subdivision's Parcel D. Courtyard had Sheehan fill one of the retention ponds, so that it could build additional homes; it also constructed duplexes where Sheehan had planned single-family housing. The result was a reduction in Parcel D's ability to absorb rainwater (more of the ground was covered with concrete) and greater demands on the stormwater system. On September 1, 2003, heavy rains fell in Indianapolis, and several homes in the subdivision were inundated when a retention pond overflowed.

The Homeowners Association sued Courtyard Homes in state court. Courtyard tendered the defense to Continental Casualty Company, whose policy covers accidental property damage. Continental denied that its policy applies, concluding that any loss was the expected result of a deliberate reduction in the subdivision's ability to deal with heavy rain or a rising river. Continental filed a declaratory-judgment action under the diversity jurisdiction, asking a federal court to vindicate its understanding of the policy's coverage. The Association and Courtyard settled the state suit for $335,000; the Association agreed to collect no more than $35,000 of this from Courtyard while seeking the rest from Continental as Courtyard's assignee. Continental does not contest this maneuver, even though it may mean that the insurer must pay substantially more than the amount required to indemnify its insured. But the stratagem proved unavailing, for the federal court concluded that Continental's policy does not apply. 2010 U.S. Dist. LEXIS 90378 (S.D. Ind. Aug. 31, 2010).

The district court did not decide whether the Association's loss was caused by an accident. Instead it concluded that the Association had not suffered "property damage" as the policy defines that phrase. In state court the Association had not asked for the money required to restore the subdivision to its original condition. Instead its complaint demanded that Courtyard take steps that would reduce future flooding hazards. In other words, the Association wanted a subdivision better than the one Courtyard had built, not recompense for injury caused by the rain on November 1, 2003. The district judge recognized that the Association might have wanted a little of each: compensation for loss plus improvements for the future. But the judge understood the complaint to seek only the latter—and as the case was settled, and the settlement agreement did not apportion the $335,000 between fixing things that had been damaged and making changes to curtail future loss, there is no basis for requiring Continental to pay. Its policy covers out-of-pocket losses but not improvements. To put this differently: the flood in November 2003 reveals that the homes are worth less than the buyers thought, but Continental did not insure the market value of the real estate.

The Association contends that the district judge misunderstood the nature of the state suit. That suit cannot have sought prospective relief, the Association insists, because the complaint demanded money rather than an injunction. Yet money may be used to make tomorrow's improvements as surely as it may be used to reimburse yesterday's losses. The choice between money and equita-

ble relief affects *who* does the work, not *what* work will be done. An injunction could have compelled Courtyard to make improvements; money enables the Association (or a contractor of its choice) to make them.

The Association does not contend that Continental's policy requires it to pay for capital improvements. No insurer would write such a policy; the moral hazard would be overpowering. Protected by a policy covering the costs of improvements, a builder would produce a substandard project and demand that the insurer finish the job; builder and buyers could split the savings. Insurers, recognizing this incentive, would raise the price of their policies so high that no builder planning to do the job right would find the offer attractive. The result would be the collapse of the insurance market. No one would gain, and honest builders would lose because insurance would no longer be available. That's why Continental's policy does not cover the expense of improving the subdivision's flood defenses.

Like the district judge, we recognize that the $335,000 may have included compensation for loss (for example, carpets and books in the homes' basements may have been damaged during the flood) in addition to paying for capital improvements (for example, larger stormwater drains and tanks to replace the capacity of the missing retention pond). But neither the parties to the settlement nor the state judge tried to apportion the recovery. The Association might have asked the federal district judge to do this but it did not. Its request that we remand for this purpose comes too late. The district

judge did not err in declining to undertake this task *sua sponte*—and we doubt that the judge should have engaged in the exercise had he been asked. It would be problematic to give weight to an apportionment, made without Continental's consent, in the original settlement agreement. A self-serving declaration years later about what the money "really" was for would not carry much weight.

Given the conclusion that the $335,000 does not represent an award for property damage, we need not consider Continental's argument that the loss was not accidental. It is easy to see how the unanticipated outcome of a calculated choice *can* be an "accident." The designers and builders of the *Titanic* knew exactly what kind of steel they were using in its hull, but they did not appreciate how brittle the steel would become in cold water and thus did not anticipate what would happen when it scraped against an iceberg. The *Titanic*'s sinking was accidental even though the effect of cold water and ice on the steel was dictated by the laws of physics. The Association contends that the subdivision's water problem is accidental in the same sense: Engineers who designed the water retention and removal system thought that the inflow would be lower and the water-handling capacity higher, and this error in modeling and design makes it sensible to call the problem an accident. An auto crash caused by a design defect is as much an "accident" as one caused by a manufacturing defect, even though the car with the negligent design was built according to spec. But a policy of property-damage insurance for cars (or ocean liners) does not require the

insurer to pay for rebuilding the product to reduce the chance of future accidents; the policy covers only the losses caused by accidents that have already occurred.

The parties' briefs dwelt at length on the question whether Indiana gives assignees, as well as policy holders, the benefit of the *contra proferentum* principle—the rule that ambiguities in an insurance policy are construed against the insurer. The district court held that this rule does not apply when an assignee such as the Association makes a claim under the policy. We need not decide whether this is right. It is the language of the Association's own complaint in state court—and the absence of any effort to apportion the $335,000—rather than any ambiguous language in the policy that entitles Continental to judgment.

AFFIRMED